351 So.2d 716 (1977)
David Jon HORNBLOWER, Petitioner,
v.
STATE of Florida, Respondent.
No. 49568.
Supreme Court of Florida.
October 27, 1977.
Michael J. Minerva, Public Defender, Tallahassee, for petitioner.
Robert L. Shevin, Atty. Gen., Tallahassee, Carolyn M. Snurkowski and Charles W. Musgrove, Asst. Attys. Gen., Tallahassee, for respondent.
SUNDBERG, Justice.
By the constitutional authority conferred on this Court through Article V, Section (3)(b)(3), Florida Constitution, we entertain this petition for certiorari to resolve a conflict between the decision of the District Court of Appeal, First District, reported at 331 So.2d 339 (Fla. 1st DCA 1976), and Parsons v. State, 334 So.2d 308 (Fla. 1st DCA 1976), the latter case involving a different party to the same criminal transaction. The issue involved is the legality of a warrantless search of premises occupied by petitioner and the seizure of contraband in connection with that search.
Petitioner was charged by information with possession of amphetamines with intent to sell and possession of less than five grams of marijuana. He was apprehended after his brother, Dale, had arranged a sale of amphetamines to Deputy Sheriff Crook (acting in an undercover fashion) at the mobile home where the brothers resided. When the deputy arrived, he did not enter the mobile home but during a conversation with Dale outside, observed persons smoking inside and smelled the odor of marijuana or hashish smoke emanating from the trailer. The deputy then asked Dale if he had marijuana or hashish for sale. Dale responded in the affirmative and entered the mobile home to procure the cannabis. He returned punctually with the hashish which Crook examined. Dale then informed the deputy that although he had some amphetamine tablets on hand, he did not have the quantity which the deputy desired to purchase. However, Crook was informed that an additional amount could be obtained at another mobile home park. The deputy followed Dale by automobile to the other park where Dale effected the sale of the tablets and the hashish. At that point, he was arrested by Detectives O'Brien and Clark who had been electronically monitoring the "buy." Following the arrest, Dale admitted that he and petitioner were selling amphetamine tablets and that petitioner had given him the first group of *717 tablets. O'Brien and Clark then transported Dale to jail while Crook proceeded back to the brothers' residence to take up surveillance.
At least forty-five (45) minutes elapsed at the jail before all the officers were reunited at the mobile home. The deputies maintained their surveillance until someone left the home and began to exit in his vehicle. This vehicle was stopped and searched, but no contraband was found. Later, a second vehicle drove away from the trailer and that automobile was also apprehended. A subsequent search produced a quantity of marijuana residue in the vehicle, seven foil packets of hashish and a homemade pipe on the person of the driver, Parsons.
The officers then decided to return to petitioner's trailer and search for additional drugs. Without any effort to obtain a search warrant, the officers approached, knocked, announced who they were, and after detecting noise of scurrying activity within, forceably entered. They seized some amphetamine pills and marijuana cigarette butts which were the subject of petitioner's motion to suppress.
At the suppression hearing, it was alleged that the search and seizure were conducted without warrant and without probable cause, in violation of the petitioner's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and Article I, Section 12 of the Florida Constitution. The motion was denied. Petitioner then pleaded nolo contendere, reserving the right to appeal the denial of his motion to suppress. The District Court of Appeal, First District, held that the officers had probable cause to search the residence and that exigent circumstances existed to make the warrantless search. (Mills, J., dissenting.)
The Fourth Amendment to the United States Constitution is an expression of our founding fathers' uneasiness with the potential omnipotence of a federal government. It reflects the notion that an individual can never enjoy the tranquility which he deserves if the government is free to tamper with his expectations of privacy through arbitrary searches. Consequently, the central theme of the Fourth Amendment is its prohibition against general searches. Practices like random entries into people's homes or random searches of people walking the streets, to acquire information or obtain evidence are repulsive to our concept of a democratic society. See Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). In essence, the Fourth Amendment forbids those occurrences and evinces the axiom that privacy is not a gratuity which we hold at the whim of our government. Only when there is a special governmental need that can be stated with particularity, will we allow the government to intrude on an individual's privacy.
To implement this principle, the Supreme Court of the United States has mandated that warrantless searches "are per se unreasonable under the Fourth Amendment  subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Accord, United States v. United States District Court, 407 U.S. 297, 317, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). These exceptions have been "jealously and carefully drawn," Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958), and the burden is upon the State to demonstrate that the procurement of a warrant was not feasible because "the exigencies of the situation made that course imperative." McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948). See also Coolidge v. New Hampshire, 403 U.S. 443, 445, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951); Vale v. Louisiana, 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Root v. Gauper, 438 F.2d 361, 364 (8th Cir.1971); Shepard v. State, 319 So.2d 127 (Fla. 1st DCA 1975); Hannigan v. State, 307 So.2d 850 (Fla. 1st DCA 1975).
*718 In the instant case, the State did not obtain a warrant to search the petitioner's trailer. Consequently, precedent mandates that respondent demonstrate the existence of exigent circumstances which made the acquisition of a warrant unfeasible. Because the State has been unable to carry this burden, we are constrained to quash the decision of the District Court of Appeal, First District.
Initially, we note that there was ample probable cause to support the search. A controlled purchase was made from the premises, State v. Gieseke, 328 So.2d 16 (Fla. 1976), the seller indicated he had plenty of "smoke," and the officers smelled burning cannabis emanating from the trailer. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Porter v. State, 302 So.2d 481 (Fla. 3d DCA 1974). But probable cause itself is not sufficient to support a warrantless search. As enunciated above, any warrantless search is presumed to be illegal unless there are exigent circumstances in addition to probable cause. The State submits that the scurrying around by the occupant when the police knocked at the door and announced their presence supplied justification for a warrantless search. It speculates that evidence might have been destroyed had the police taken time to obtain a warrant. We reject this rationale. In his testimony, the officer acknowledged that he intended to enter and search the trailer before he ever approached the mobile home. To sustain respondent's argument would be to endorse the precise kind of conduct which the Fourth Amendment seeks to proscribe. Police could approach a dwelling, armed only with their own subjective suspicion that illegal activity was afoot, and wait for some suspicious movement, thereby giving them justification to break down the door and burst into the dwelling. Officers then would be equipped with the power to conduct any warrantless quest for evidence of guilt or of crime. Consequently, the suspicious movement which occurred when the police announced their presence cannot supply the exigent circumstances for the warrantless search. See Hannigan v. State, supra.
Notwithstanding the existence of probable cause, to carry its burden, the State needed to show that there was insufficient time to secure a search warrant. In effect, if time to get a warrant exists, the enforcement agency must use that time to obtain the warrant. Excluding the consent and plain view situations, which remove the need for a warrant, every "exception" to the warrant requirement derives from an emergency situation, where to obtain a search warrant would defer police activity that must be performed punctually to be effective.[1] Thus, in the search-incident exception, the exigent circumstances justifying quick action are destruction of incriminating evidence within the reach of the arrested individual and harm to the arresting officer. Coolidge v. New Hampshire, supra. Lying at the heart of the "hot pursuit" and "destruction of evidence" exceptions is the element of urgency and immediate, responsive action by police. Additionally, the "emergency exception" permits police to enter and investigate private premises to preserve life, property, or render first aid, provided they do not enter with an accompanying intent either to arrest or search, Johnson v. United States, supra; United States v. Barone, 330 F.2d 543 (2d Cir.1964), cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964). Again, the need to act expeditiously is essential.
From the facts of the case sub judice, it is apparent that no such emergency existed. The State seems to have had sufficient time to get a search warrant. There is no demonstrated attempt to secure one which was frustrated, thereby compelling action without a warrant. Deputy O'Brien was at the *719 police station for at least forty-five (45) minutes while the petitioner's brother was being booked. Certainly a search warrant could have been obtained during that period or at the very least an attempt could have been made to obtain one. There is no suggestion that O'Brien even considered utilizing the established procedure for contacting a magistrate during "after-hours." Furthermore, the long delay between the time probable cause vested and the commencement of the search belies the assertion that the police were unable to obtain a warrant. The State's contention that exigent circumstances were present because the occupants' suspicions would be raised due to Dale's failure to return, provoking them to destroy the contraband, is untenable. Law enforcement officers may not sit and wait as here (when they could be seeking a warrant), then utilize their self-imposed delay to create exigent circumstances.
It is obvious that a balance must be maintained between conflicting interests of society that would promote security within one's home and at the same time, maximize the freedom of law enforcement officers to protect the peace of the community. Towards that goal, the Fourth Amendment establishes a procedure for effectuating the rights of individuals  the deliberation of a dispassionate and detached magistrate who initially makes an independent determination as to probable cause before a warrant may issue. Only under special circumstances is it unnecessary to follow this procedure. Were a magistrate not interposed between the policeman and the individual before a person's privacy was threatened, that precious equilibrium between individual privacy and orderly society would be disrupted. As stated by the United States Supreme Court in Johnson v. United States, supra:
The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. (citations omitted)
Accordingly, the petition for certiorari is granted and the decision of the District Court of Appeal, First District, is quashed with directions to remand to the trial court for proceedings not inconsistent with this opinion.
It is so ordered.
ADKINS, BOYD and ENGLAND, JJ., concur.
OVERTON, C.J., dissents with an opinion.
OVERTON, Chief Justice, dissenting.
I dissent.
I would find that exigent circumstances existed and would affirm the decision of the First District Court of Appeal.
NOTES
[1] The "Plain View" doctrine has frequently been considered an exception to the warrant requirement. In reality, materials that are seized because they are in plain view of an officer who observes from a location where he has a legal right to be are not subject to Fourth Amendment protection because their exposure implies that the possessor has no expectation of privacy regarding those articles. Similarly, one who consents to a warrantless search relinquishes any expectation of privacy which he might have as to the articles being searched.