355 So.2d 180 (1978)
Herbert TAYLOR, Appellant,
v.
The STATE of Florida, Appellee.
No. 76-1611.
District Court of Appeal of Florida, Third District.
February 14, 1978.
Rehearing Denied March 10, 1978.
*181 Arthur F. McCormick, South Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Ira Loewy, Asst. Atty. Gen., for appellee.
Before PEARSON, NATHAN and HUBBART, JJ.
HUBBART, Judge.
This is a criminal prosecution for illegal importation of marijuana before the Dade County Circuit Court. The defendant was convicted as charged upon his nolo contendere plea which was entered with the specific reservation that he could appeal to this court the trial court's denial of his pre-trial motion to suppress certain evidence. We have jurisdiction to entertain the defendant's subsequently filed appeal solely as to that issue because it was properly preserved in the trial court and a resolution thereof is dispositive of the case. State v. Ashby, 245 So.2d 225, 228 (Fla. 1971); Tiller v. State, 330 So.2d 792, 793 (Fla.1st DCA 1976); Jackson v. State, 294 So.2d 114 (Fla.4th DCA 1974).
The central question presented for review is whether a free and voluntary consent to conduct a warrantless search of a boat may be obtained by a law enforcement officer from the boat's owner after *182 such officer has begun an admittedly unlawful search of the boat. We hold that, absent a clear and convincing showing of an unequivocal disavowal or break from the prior illegal search sufficient to dissipate the taint of the prior illegality, no such free and voluntary consent can be given as it is tainted by the prior illegal search. As such, any search conducted pursuant to such coerced consent is unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution[1] and Article I, Section 12, of the Florida Constitution,[2] and the fruits of such a search are inadmissible in evidence.

I
The controlling facts of this case are substantially undisputed. On February 11, 1976, at approximately 10:30 a.m., Officer Mike Tucker of the Florida Marine Patrol was on duty alone in his patrol boat in the waters off Government Cut in Dade County, Florida. He saw a boat known as "The Old Breed" coming into Government Cut headed west. The defendant Herbert Taylor was standing toward the stern of the boat and it develops he was the owner and captain of the boat. There was at least one other person aboard.
Officer Tucker checked with his superiors by radio and learned that "The Old Breed" was not wanted for any violations of the law. In past years, however, he knew that this boat had been suspected of bringing in undersized lobsters from outside the territorial waters of the United States. He was unaware of the source of this information and the state makes no claim either in the court below or before this court that this gave the officer probable cause to search the boat. He did notice that there was a visible expired commercial registration certificate on the boat and decided to stop the boat for further investigation.
Officer Tucker pulled alongside the defendant's boat but was unable to converse with the defendant due to the noise of the idling boat engines. The officer thereupon boarded the defendant's boat and began asking the defendant if there were any fish aboard and where the defendant had been with his boat. The defendant by this time had been joined by a companion aboard the boat and was apparently quite friendly with the officer. He answered all of the officer's questions while also inquiring himself in a friendly way as to certain other Marine Patrol officers whom he apparently knew.
Officer Tucker's purpose in boarding the boat and questioning the defendant was, as he testified, to determine if the defendant had any undersized lobsters on the boat. He made no inquiry concerning the expired boat registration. The officer asked what the defendant had in an icebox cooler on deck after the defendant denied having any fish on board. As the officer asked, he opened and looked into the cooler. Nothing incriminating was discovered. The officer then pointed and asked if a certain part of the boat was the fish hold. The defendant replied that it was and the officer then asked: "Can I look inside, I would just like to look inside." The defendant made no response, but pulled the tarpaulin cover aside and lifted up the hatch because, as he testified, he thought the officer had a right to look therein. The officer at no time *183 advised the defendant that he had a right to refuse the police request to look in the hold or search the boat. The officer looked inside the hold for short lobsters and discovered a large quantity of marijuana which was eventually seized. Weapons were also discovered aboard the boat thereafter. No search warrant was ever obtained in this case.
The defendant was subsequently charged by information with illegal importation and possession of marijuana before the Circuit Court for the Eleventh Judicial Circuit of Florida. Sections 893.13(1)(d), (e), Florida Statutes (1975). The defendant filed a pre-trial motion to suppress the marijuana seized from his boat on the ground that it was unlawfully seized without a warrant. The trial court heard testimony which revealed the above facts and denied the motion. The trial court concluded that the defendant had voluntarily consented to the search. Thereupon, the defendant entered his nolo contendere plea as above stated to the charge of illegal importation of marijuana, and the state dismissed the possession of marijuana charge. This appeal follows.

II
The law is well-settled that a search of private property conducted by state or federal agents without a duly issued search warrant is per se "unreasonable" under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 12, of the Florida Constitution  subject only to a few specifically established and well-delineated exceptions justified by absolute necessity. These exceptions have been jealously and carefully drawn, and the burden is upon the state to demonstrate their application in a given case which implicit therein requires a showing that the procurement of a search warrant was not feasible because the exigencies of the situation made that course imperative. United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Hornblower v. State, 351 So.2d 716 (Fla. 1977); Haile v. Gardner, 82 Fla. 355, 91 So. 376, 378 (1921); Britton v. State, 336 So.2d 663 (Fla.1st DCA 1976); Shepard v. State, 319 So.2d 127 (Fla.1st DCA 1975); Hannigan v. State, 307 So.2d 850 (Fla.1st DCA 1975).
"[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." Bumper v. North Carolina, 391 U.S. 543, 548-49, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). In particular, the state in Florida must show by "clear and convincing" evidence that the defendant freely and voluntarily consented to the search. Sagonias v. State, 89 So.2d 252, 254 (Fla. 1956).
A distinction is recognized in the law between submission to the apparent authority of a law enforcement officer and unqualified consent. Mere acquiescence in a search is not necessarily a waiver of a valid search warrant. Rather for a person to waive his search and seizure rights, it must clearly appear that he voluntarily permitted or expressly invited and agreed to the search. Bailey v. State, 319 So.2d 22, 27 (Fla. 1975); Talavera v. State, 186 So.2d 811 (Fla.2d DCA 1966).
In each consent search case, it must be determined from a "totality of the circumstances" as to whether the consent was in fact voluntarily given by the defendant or was the product of duress or coercion, express or implied. Schneckloth v. Bustamonte, 412 U.S. 218, 227-229, 93 S.Ct. 2041, 2047-49, 36 L.Ed.2d 854 (1973); State v. Othen, 300 So.2d 732, 733 (Fla.2d DCA 1974). In this connection, the cases yield no talismanic definition of "voluntariness" mechanistically *184 applicable to a host of situations where the question has arisen because the notion is itself an amphibian. Schneckloth v. Bustamonte, 412 U.S. 218, 224, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973). Nonetheless, some broad trends are discernible in the cases.
One of those broad trends is that any serious illegal actions by a law enforcement officer, such as an illegal arrest, almost always render involuntary any subsequent consent to search given by the victim of the illegal action. Bailey v. State, 319 So.2d 22, 27-28 (Fla. 1975); Earman v. State, 265 So.2d 695 (Fla. 1972); Urquhart v. State, 211 So.2d 79 (Fla.2d DCA 1968). Indeed, it has long been held that an illegal arrest or an illegal search presumptively taints and renders involuntary any subsequent confession or admission obtained from the victim of the arrest or search. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); State v. Rheiner, 297 So.2d 130 (Fla.2d DCA 1974); State v. Neri, 290 So.2d 500 (Fla.2d DCA 1974); Betancourt v. State, 224 So.2d 378, 381 (Fla.3d DCA 1969); French v. State, 198 So.2d 668 (Fla.3d DCA 1967). The only exception recognized by the cases in which a prior illegal arrest or search would not render a subsequent consent, confession or admission involuntary is where there has been a clear and unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal action. These would certainly be rare cases as our Supreme Court has noted. Bailey v. State, 319 So.2d 22, 27-28 (Fla. 1975).
The law is equally clear as to the evidentiary consequences attendant upon an unreasonable search and seizure under either the federal or Florida constitution. Any evidence seized by law enforcement agents in violation of the Fourth and Fourteenth Amendments to the United States Constitution or in violation of Article I, Section 12, of the Florida Constitution is inadmissible in evidence. It is sufficient if either one or both of these constitutional provisions have been violated in order to render the seized evidence inadmissible against the victim of the search in a Florida court. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Gildrie v. State, 94 Fla. 134, 113 So. 704 (1927).
Although there has been some suggestion that the Fourth Amendment exclusionary rule should be altered or abolished, Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring, White, J. dissenting); Bivens v. Six Unknown Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Burger, C.J., dissenting), the rule of Mapp v. Ohio, supra, remains intact. In addition, even if the federal exclusionary rule is changed, this in no way affects the fifty year old rule in Florida that evidence seized in violation of Article I, Section 12, of the Florida Constitution is inadmissible in evidence. Gildrie v. State, 94 Fla. 134, 113 So. 704 (1927). "In Florida the exclusionary rule is not merely a judicial construct but is written into the Constitution itself. `Articles or information' obtained unreasonably, within the meaning of Art. I, § 12, `shall not be admissible in evidence.'" Croteau v. State, 334 So.2d 577, 580-581 (Fla. 1976) (Hatchett, J., concurring). As the Supreme Court of Florida in Sing v. Wainwright, 148 So.2d 19, 20 (Fla. 1962), has cogently noted:
"Mapp v. Ohio, supra, added nothing whatever to the law of Florida. It created no new procedural right so far as the jurisprudence of this State is concerned. This Court long ago concluded that evidence obtained as the product of an unreasonable search is not admissible in a criminal proceeding. Florida has long recognized the so-called `exclusionary rule' regarding the inadmissibility of such evidence."

III
Turning to the instant case, it is clear that Officer Tucker had the authority to stop the defendant's boat because it was carrying an expired commercial boat registration in violation of Section 371.051(7), Florida Statutes (1975). Such power, however, did not carry with it the automatic *185 authority for Officer Tucker to conduct a general search of defendant's boat. Hill v. State, 238 So.2d 608 (Fla. 1970). Yet that is exactly what Officer Tucker proceeded to accomplish in this case under the guise of consent.
The officer's purpose in boarding the boat, as he testified, was to determine if the boat contained undersized lobsters as previously suspected. Upon boarding, he politely, but firmly proceeded to question the defendant with respect thereto without any mention of the expired boat registration. And while doing so, he looked into the icebox cooler on the deck of the boat searching the cooler for undersized lobsters. Officer Tucker correctly admitted to the court that he exceeded his authority in conducting such a search. Almost immediately thereafter, he pointed to the hold in the boat and asked if he could look therein. The defendant acquiesced by opening the hatch without saying a word. Under these circumstances, it is our view that the defendant's silent consent was tainted by the prior illegal search of the icebox cooler and therefore represents an acquiescence to authority rather than a free and voluntary consent to search. The defendant testified that he thought that the officer had a right to look in the hold, a not unreasonable belief since the officer had just prior thereto asserted his right to search the cooler without a search warrant and without obtaining the defendant's permission. The fact that the prior illegal search yielded no contraband in no way dissipates the admitted illegality of such search nor its obvious coercive effect on the defendant.
The trial judge based his ruling in part on the fact that the defendant was friendly to Officer Tucker during the boarding and search of the boat, that the defendant had at least one other companion on board, and that there were guns stored elsewhere in the boat. These are certainly relevant considerations in examining the issue of voluntariness based on the totality of the circumstances. They are, however, insufficient in our view to break the chain of serious illegality set in motion by the officer's admitted prior illegal search of the icebox cooler. Implicit with that action, Officer Tucker was asserting his right to search hidden areas on the boat without probable cause and without a search warrant, an authority he clearly did not have.
The trial judge was entirely correct in rejecting the defendant's argument made below that the failure of the officer to advise the defendant that he did not have to consent to the search automatically made the subsequent consent involuntary. It was, however, a factor to be considered in assessing the totality of the circumstances on the issue of voluntariness. Schneckloth v. Bustamonte, 412 U.S. 218, 217, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); State v. Othen, 300 So.2d 732, 733 (Fla.2d DCA 1974); State v. Spanierman, 267 So.2d 102 (Fla.2d DCA 1972); State v. Custer, 251 So.2d 287 (Fla.2d DCA 1971). In the context of this case, such a factor takes on particular significance in view of the illegal search which preceded the defendant's alleged consent to search. Such an advisement by the officer given prior to the challenged consent might very well have broken the chain of presumptive coercion created by the prior illegal search; conversely, the absence of such a warning lends further credence to our conclusion that the chain of illegality herein was in no way broken.
We are not unmindful of the rule that a trial court's decision on a motion to suppress the fruits of an unreasonable search and seizure comes to the appellate court with a presumption of correctness, and that in testing the correctness of the trial court's conclusions, we should interpret the evidence and all reasonable inferences and deductions capable of being drawn therefrom in a light most favorable to sustain these conclusions. Rodriquez v. State, 189 So.2d 656, 660 (Fla.3d DCA 1966). Having done this, however, "if a doubt exists as to whether the officer was reasonable in concluding that a search was justified, such a doubt must be resolved in favor of the defendant whose property was searched." Miller v. State, 137 So.2d 21, 25 (Fla.2d DCA 1962). As applied to a warrantless *186 consent search, the facts as viewed most favorable to the state must establish "by clear and convincing evidence" that the defendant freely and voluntarily consented to the search. Sagonias v. State, 89 So.2d 252, 254 (Fla. 1956).
Viewing the evidence in this cause in a light most favorable to the state, we must conclude that Officer Tucker conducted an illegal search of the icebox cooler on the defendant's boat which in turn presumptively tainted and made involuntary the defendant's alleged silent consent to search the boat's hold, which prior illegal search was in no way dissipated by any other intervening factor. At the very least, a serious doubt exists concerning this matter and the state failed to establish by clear and convincing evidence that the defendant freely and voluntarily consented to the search.
Our conclusion herein is further supported by the long standing rule that the Fourth Amendment to the United States Constitution and Article I, Section 12, of the Florida Constitution should receive a liberal construction so as to safeguard our most precious right of privacy. United States v. Lefkowitz, 285 U.S. 452, 464, 52 S.Ct. 420, 423, 76 L.Ed. 877, 882 (1932); Gouled v. United States, 255 U.S. 298, 303-304, 41 S.Ct. 261, 65 L.Ed. 647 (1921); Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 29 L.Ed. 746 (1885); Atz v. Andrews, 84 Fla. 43, 94 So. 329 (1922). The courts must be vigilant to scrutinize the attendant facts in a search and seizure case with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods. Constitutional provisions for the security of person or property are to be liberally construed and it is the duty of the courts to be watchful for the constitutional rights of the citizen and against any stealthy encroachments thereon. The Fourth Amendment was adopted in view of a long misuse of power in the matter of searches and seizures both in England and the colonies; and the assurance against any revival of it, so carefully embodied in the fundamental law, is not to be impaired by judicial sanction of equivocal methods, which, regarded superficially may seem to escape the challenge of illegality but which, in reality, strike at the substance of the constitutional right. Byars v. United States, 273 U.S. 28, 32, 47 S.Ct. 248, 249, 71 L.Ed. 520, 523, 524 (1929); Atz v. Andrews, 84 Fla. 43, 94 So. 329 (1922). Although such a liberal construction does not forbid the application of common sense in the detection of crime and the apprehension of criminals or require us to strain our Constitution through a filament of unrealistic exactitude, State v. Nittolo, 317 So.2d 748, 750 (Fla. 1975), nonetheless we are compelled in close cases to decide in favor of the individual rights of the citizen as guaranteed by the above constitutional provisions because of the extreme importance of such rights to the maintenance of a free society. See Brinegar v. United States, 338 U.S. 160, 180-82, 69 S.Ct. 1302, 1313-1314, 93 L.Ed. 1879 (1949) (Jackson, J. dissenting); Hornblower v. State, 351 So.2d 716 (Fla. 1977).
The trial court, therefore, erred in denying the defendant's pre-trial motion to suppress the marijuana seized from the defendant's boat. Under both the federal and Florida constitutions, the marijuana herein was the fruit of an unreasonable search and seizure and was therefore inadmissible in evidence.
The defendant's conviction herein is reversed and the cause remanded to the trial court with directions to allow the defendant to withdraw his nolo contendere plea and discharge the defendant from the cause.
Reversed and defendant discharged.
PEARSON, Judge (dissenting).
I would affirm the finding of the trial judge that the appellant consented to the search of the hold which, in turn, revealed the incriminating evidence. Under the complicated statement of facts as set out in the majority opinion, the question of consent was primarily a question for the trial judge and his determination should be accepted on appeal unless clearly erroneous. See Rodriquez v. State, 189 So.2d 656 (Fla.3d DCA 1966).
*187 The essential holding of the majority as I read the opinion is that, under the circumstances of this case, the defendant's consent was tainted by the prior illegal search of an icebox cooler and the additional holding that the consent represented an acquiescence to authority rather than a free and voluntary consent to the search. With regard to the lifting of the lid of the icebox cooler, it seems entirely immaterial to me in that it did not lead to the discovery of the contraband. This, however, does not appear to be the controlling point upon which the majority based its reversal, inasmuch as the majority substituted its judgment for that of the trial judge under a finding that the admitted consent was in actuality an "acquiescence to authority." I simply do not find the circumstances so overwhelming. Cf. the considerations of law in Longo v. State, 157 Fla. 668, 26 So.2d 818, 819-820 (1946).
I would affirm.
NOTES
[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.Const. amend. IV. "[N]or shall any State deprive any person of life, liberty, or property, without due process of law ..." U.S.Const. amend. XIV § 1
[2] "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence." Art. I, § 12, Fla. Const.