372 So.2d 104 (1979)
Anthony Raymond POMERANTZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 78-840.
District Court of Appeal of Florida, Third District.
May 15, 1979.
Rehearing Denied June 13, 1979.
*106 Alan M. Medof, Miami, for appellant.
Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., and Sharon Langer, Legal Intern, for appellee.
Before HENDRY and HUBBART, JJ., and EZELL, BOYCE F., Jr. (Ret.), Associate Judge.
HUBBART, Judge.
This is a criminal prosecution for possession of marijuana with intent to distribute in which the defendant was convicted as charged and placed on probation in the Circuit Court for the Eleventh Judicial Circuit of Florida. The defendant appeals.
We are concerned upon review of this case with whether the evidence upon which the conviction herein rests was the product of an unreasonable search and seizure and thus subject to being suppressed upon the defendant's timely motion in the trial court. Based on the authorities and reasoning which follow, we conclude that the search herein was conducted by the police rather than a private party, that the search was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 12, of the Florida Constitution, and that the fruits thereof should have been suppressed by the trial court. Accordingly, we reverse.

I
The facts pertaining to the search and seizure issues involved in this case are as follows. On November 16, 1977, between 3:30 p.m.  3:45 p.m., the defendant Anthony Pomerantz arrived at the Miami International Airport and checked a three piece matched set of suitcases on a non-stop Continental Airlines flight to Denver, Colorado, on which he held a reserved seat. He received three consecutively numbered baggage claim receipts for his checked luggage and thereafter boarded the plane which was scheduled to leave at 4:25 p.m. that afternoon.
Pursuant to routine procedure, airline employees placed the defendant's three suitcases on a conveyor belt which went to a baggage room for eventual transport to the Continental Airline flight on which the *107 defendant was ticketed. While in transit, one of the three matched suitcases got jammed on the conveyor belt against an adjoining pipe which caused the suitcase to break open. An airline employee in the baggage room discovered the damaged suitcase, took it off the conveyor belt and observed that the suitcase contained two black plastic trashbags which were taped shut. He unsuccessfully attempted to place these bags back and close the suitcase, and, as he did so, some seeds of undisclosed description came off in his hands.[1] He thereafter notified Continental Airlines supervisor Kenneth Schroeder.
Mr. Schroeder immediately came to the baggage area and observed the damaged, open suitcase with the two black plastic trashbags therein. The defendant's two other suitcases had also been taken off the conveyor belt and were standing next to the open suitcase. All three suitcases had airline baggage tags on them, but had no other identification. Mr. Schroeder thereupon notified the police to investigate the matter.
Detectives William Johnson and Miguel Magdalena of the Dade County Public Safety Department, specifically assigned to the airport, responded to the call and came to the baggage area. Mr. Schroeder showed the officers the suitcase that had broken open with the two black plastic trashbags contained therein. The officers thereupon opened these two black plastic bags to ascertain their contents. They determined that the contents were marijuana based on their training and experience.
A discussion then ensued as to whether the other two suitcases should be opened to determine whether marijuana was in these suitcases as well. The officers advised that they could not open these suitcases nor could they influence Mr. Schroeder to do the same as that might nullify the search in any subsequent legal proceedings. They further stated that any decision that Mr. Schroeder made on the matter would have to be entirely his own.
Mr. Schroeder thereupon forced open the other two suitcases in the presence of the two officers. One of the suitcases contained black plastic trashbags which were taped shut. Detective Johnson cut open one of these plastic bags and determined that this too contained marijuana. The third and last suitcase contained clothing and toilet articles. Detective Johnson searched the clothing and tote bag therein finding various items of the defendant's identification including a master charge receipt and receipt from Bentley's luggage store in Miami indicating that the defendant had recently purchased the subject luggage. It was stipulated by both parties in the trial court that the police neither applied for nor obtained a search warrant for the search of the defendant's suitcases.
The Continental Airlines flight to Denver was held up during this brief investigation. Upon learning the defendant's identity, the airline was requested to page the defendant. Meanwhile, Detective Johnson and an airline employee carried the defendant's three suitcases to the jetway connecting the terminal with the airplane. A flight attendant located the defendant in the plane and told him to step outside.
The defendant, shortly thereafter, emerged from the airplane and had a conversation with Detective Johnson. The defendant was informed that his bags had fallen off the conveyor belt. The defendant thanked the officer and picked up the suitcase containing the clothing. Detective Johnson took the defendant's arm and stated that the defendant had forgotten the other two suitcases which were standing there. The defendant denied ownership of these suitcases. Detective Johnson thereupon identified himself, stated that he had reason to believe that the suitcases both belonged to the defendant and contained marijuana, and placed the defendant under arrest.
*108 At about the same time the formal arrest was effected, Detective Johnson asked the defendant for permission to search the defendant's carry-on briefcase and the defendant's person. The defendant said that the officer could do so. Detective Johnson searched the defendant's person, seized three baggage claim receipts which numerically matched the checks on the three pieces of luggage herein. The search of the briefcase yielded no incriminating evidence. At a later time while under arrest, the defendant signed a written consent to search after being told by the police that Detective Johnson would testify in court that the defendant had orally given his consent to search his person and briefcase.
The defendant was subsequently charged by information with possession of marijuana with intent to distribute [§ 893.13(1)(a), Fla. Stat. (1977)] in the Dade County Circuit Court. The defendant entered a plea of not guilty and filed a pre-trial motion to suppress the evidence seized from his three suitcases and his person. Fla.R.Crim.P. 3.190(h). The trial court took extensive testimony on the motion which established the above facts. At the conclusion thereof, the trial court ruled that the search of the three suitcases was a purely private search and not a police search, that the defendant was lawfully arrested based on the fruits of the private search, and that the search of the defendant's person was incident to that lawful arrest. Accordingly, the motion to suppress was denied.
The parties thereafter stipulated that the testimony on the motion to suppress, except as to the defendant's testimony, would be the testimony at trial. The trial court found the defendant guilty as charged based on this stipulated testimony and placed the defendant on three years probation with a special condition that the defendant serve thirty days in the county jail. The defendant appeals urging as the sole ground for reversal the denial of the motion to suppress.[2]

II
We are first confronted with the threshold question of whether the marijuana and identification papers seized from the defendant's suitcases was the fruit of a search and seizure conducted by the police or conducted by a private party. This issue was the central issue litigated in the trial court and subsequently briefed by the parties on this appeal. If it was a private search, as the trial court below concluded, our inquiry is at an end as such a search, regardless of its unreasonableness, is beyond the scope of constitutional protection. If it was a police search, as urged by the defendant, we must then inquire as to whether such a search was unreasonable.
The Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution guarantees to the people the right to be free from "unreasonable searches and seizures... .". Implicit in such constitutional guarantees is the requirement that such searches and seizures must be conducted by an agent of the government. Neither constitutional provision affords any protection against purely private searches and seizures no matter how unreasonable. Indeed, such provisions were designed to protect the individual against certain abuses of governmental power and were never intended as a limitation on private action. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); Hornblower v. State, 351 So.2d 716 (Fla. 1977); Bernovich v. State, 272 So.2d 505 (Fla. 1973); Church v. State, 151 Fla. 24, 9 So.2d 164 (1942).
The law is, therefore, clear that "the Fourth Amendment's protection applies in cases involving governmental action only, not against searches and seizures by a private individual." Bernovich v. State, 272 So.2d 505, 507 (Fla. 1973). "It has been consistently *109 held that the Fourth Amendment protection against unreasonable searches and seizures apply only in cases involving governmental action, and does not afford protection against searches and seizures by a private individual." State v. Bookout, 281 So.2d 215, 216 (Fla. 4th DCA 1973). "[E]vidence obtained as a result of a wrongful search by a private individual may be admitted into evidence in a criminal prosecution against the victim of the search if that search was not in any way instigated or participated in by government agents." Annot., 36 A.L.R.3d 553, 561 (1971). On the other hand, "[w]here a government agent participates in a lawless private search or where the individual perpetrates a lawless search at the suggestion, order or request of police such as to make him their agent, the evidence produced may be excluded as in derogation of the constitutional mandate against unreasonable searches and seizures by governmental action." Annot., 36 A.L.R.3d 553, 559 (1971). See State v. Gibson, 362 So.2d 41, 44 (Fla. 3d DCA 1978).
In the instant case, we have no problem in determining that Detective Johnson and Magdalena actively participated in the search of the defendant's suitcases. When the officers arrived in the baggage area, they observed two black plastic trashbags laying in an open suitcase. They clearly conducted a search by opening these bags, examining the contents therein and seizing the suspect marijuana. They obviously could not see through such non-transparent bags and had to conduct a search in order to discover the subject marijuana.
As to the other two suitcases, it is equally clear that the same police officers participated in searching the contents thereof. It is true that Mr. Schroeder of Continental Airlines forced open these suitcases, ostensibly on his own authority,[3] but thereafter Detective Johnson opened the black plastic trashbags contained in the second suitcase to discover more suspect marijuana and looked through the clothing and other articles in the third suitcase to discover certain other incriminating identification evidence. Nothing incriminating could be seen in plain sight by the officers after these suitcases had been opened by Mr. Schroeder. The fact that a private party like Mr. Schroeder had a hand in the search did not make it any less a governmentally conducted search as it was enough, for the purpose of invoking the protection of the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution, that the police actively participated in the search.

III
The next question in this case is whether the police search of the defendant's suitcases was "unreasonable" within the meaning of the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution. In our view, such a search was constitutionally unreasonable and the fruits thereof should have been suppressed by the trial court upon the defendant's timely motion.
The law is well-settled that a search of private property conducted by state or federal agents without a duly issued search warrant is per se "unreasonable" under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 12 of the Florida Constitution  subject only to a few specifically established and well-delineated exceptions justified by absolute necessity. These exceptions have been jealously and carefully drawn, and the burden is upon the state to demonstrate their application in a given case which implicit therein requires a showing that the procurement of a search warrant was not feasible because the exigencies of the situation made threat course imperative. United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 *110 (1972); Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Hornblower v. State, 351 So.2d 716 (Fla. 1977); Taylor v. State, 355 So.2d 180 (Fla. 3d DCA 1978).

A
In the instant case, the search of the defendant's private property, to wit: his suitcases in the airline baggage area, was conducted by the police without a search warrant and was therefore presumptively unreasonable. The state argues, however, that the seizure of the marijuana from the first suitcase was a valid plain sight seizure of contraband which excused the necessity of obtaining a search warrant therefore. We disagree.
In a long line of cases, the Florida and federal courts have held that it is not a search for the police to discover evidence in plain sight. The warrantless seizure of such evidence is constitutionally permissible providing three requirements are met: (1) the police must observe the evidence in plain sight without the benefit of a search [i.e., without invading one's reasonable expectation of privacy], (2) the police must have a legal right to be where they are when they make the plain sight observation, and (3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) and cases collected; Sheff v. State, 329 So.2d 270 (Fla. 1976); Spinkellink v. State, 313 So.2d 666 (Fla. 1975); State v. Ashby, 245 So.2d 225 (Fla. 1971); State v. Parnell, 221 So.2d 129 (Fla. 1969); Fletcher v. State, 65 So.2d 845 (Fla. 1953); State v. Clarke, 242 So.2d 791 (Fla. 4th DCA 1970); Boim v. State, 194 So.2d 313 (Fla. 3d DCA 1967). Such plain sight seizures have been treated either as an exception to the search warrant requirement rule, Coolidge v. New Hampshire, 403 U.S. 443, 464-473, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), or as being entirely beyond the scope of Fourth Amendment protection. Hornblower v. State, 351 So.2d 716, 718 (Fla. 1977). In any event, a search warrant is not required in order for the police to conduct such a constitutional seizure.
In the instant case, the police officers had every right to be where they were when they observed the black plastic trashbags contained in the first suitcase, which suitcase was laying open in the airline baggage area. It is clear, however, that they observed at this point no contraband marijuana in plain sight. It was necessary for the officers to conduct a search by slitting open the black plastic trashbags in order to discover the marijuana. As such, no valid plain sight seizure of contraband from the first suitcase was ever accomplished and the search and seizure conducted therein was unreasonable. Carr v. State, 353 So.2d 958 (Fla. 2d DCA 1978).

B
The state next contends that the warrantless search of the second and third suitcases was reasonable because it was based on probable cause and was conducted under exigent circumstances which made it impracticable to obtain a search warrant. Here the state apparently relies on a general exception to the search warrant requirement rule that "[p]robable cause to search plus exigent circumstances will usually justify a warrantless search." Raffield v. State, 351 So.2d 945, 947 (Fla. 1977). We find this exception inapplicable to the instant case.
The search of the second and third suitcases was based entirely on the fruits of the unreasonable search of the first suitcase. As such, there was no probable cause for the search of the second and third suitcases under the fruit of the poisonous tree doctrine. The unreasonable search of the first suitcase fatally tainted the subsequent search of remaining suitcases. "Evidence which is located by the police as a result of information and leads obtained from illegally seized evidence, constitutes `the fruit of the poisonous tree' and is equally inadmissible *111 in evidence." French v. State, 198 So.2d 668, 669 (Fla. 3d DCA 1967). As such, the search and seizure conducted by the police as to the second and third suitcases was unreasonable.[4]

IV
The final issue in this case is whether the search of the defendant's person was "unreasonable" within the meaning of the Fourth Amendment to the United States Constitution and Article I, Section 12 of the Florida Constitution. In our view, such a search was constitutionally unreasonable and the fruits thereof should have been suppressed by the trial court upon the defendant's timely motion.
The trial court concluded that the search of the defendant's person was reasonable because it was made incident to a lawful arrest of the defendant which required no search warrant to conduct. State v. Gustafson, 258 So.2d 1 (Fla. 1972). It is clear, however, that the defendant's arrest was unlawful because it was based entirely on the fruits of the unreasonable search of the defendant's suitcases. As such, the search conducted incidental thereto was unreasonable and its fruits were inadmissible in evidence. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); D'Agostino v. State, 310 So.2d 12 (Fla. 1975); Brown v. State, 62 So.2d 348 (Fla. 1952).
The state urges that the search of the defendant's person was based on the defendant's voluntary consent which dispensed with the necessity of a search warrant. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). We disagree. The trial court implicitly, although not expressly, rejected this contention by treating the search as incident to the arrest. Moreover, it has long been held that an illegal arrest, as here, presumptively taints and renders involuntary any subsequent consent to search. Bailey v. State, 319 So.2d 22, 27-28 (Fla. 1975). We see no evidence in this case which breaks the chain of presumptive invalidity as to the consent given herein. See Taylor v. State, 355 So.2d 180, 184 (Fla. 3d DCA 1978).

V
The conviction and sentence appealed from is reversed and the cause remanded to the trial court with directions to grant the defendant's pre-trial motion to suppress. As the state's entire case is based upon the fruits of this search, the trial court is further directed to discharge the defendant from the cause.
Reversed and remanded.
NOTES
[1] There is no further mention of these seeds in the testimony of any other witness in the case. So far as the record discloses, it is unknown as to what these seeds were or whether their discovery was ever relayed to or verified by any other witness in the case.
[2] This error is squarely presented by the defendant in his appellate brief filed in this cause wherein he urges that "the order denying [a]ppellant's [m]otion to [s]uppress ... should be reversed." See Fla.R.App.P. 9.040(e), 9.210(b) and committee notes. We decline to interpret counsel's oral argument before this court as a waiver, either in whole or in part, of this error for appellate review.
[3] We entertain serious doubts as to whether the officers by their legal disclaimers effectively disassociated themselves from Mr. Schroeder's act of opening these two suitcases. It certainly was no idle curiosity which kept the officers present while the suitcases were pried open. It is not necessary, however, to resolve this question in view of the officers' subsequent participation in the search after the suitcases had been opened.
[4] We leave for another day a determination of the question as to whether exigent circumstances might exist for the warrantless search of luggage which, as here, has been checked on an airline flight destined to leave the jurisdiction within a short period of time. Such in transit luggage could be treated the same as first class mail, see United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), or might more appropriately be analogized to a moving vehicle search. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), adopted as the law of Florida by § 933.19, Fla. Stat. (1977), and compare United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). It is not necessary to reach that question in this case, however, because clearly no probable cause existed for the search of the second and third suitcases which renders inapplicable, in any event, the exigent circumstances exception to the search warrant requirement rule.