EVANDER, J.
After the denial of his motion to suppress, Hernandez entered a no contest plea to the charge of trafficking in twenty-eight grams or more of cocaine. He reserved the right to appeal the denial of his motion, which the trial court properly found to be dispositive. Hernandez was adjudicated guilty and sentenced to the minimum mandatory sentence of three years in prison.[1] On appeal, Hernandez correctly argues that the warrantless search of his locked bedroom during a purported “protective sweep” of his apart *704 ment violated the Fourth Amendment prohibition against unreasonable searches and seizures.
The evidence presented at the motion to suppress hearing reflected that on the day in question, Deputy Connelly responded to a 9-1-1 call involving Hernandez’ girlfriend, Elizabeth Romero. The deputy met Ms. Romero at Hernandez’ apartment complex and placed her in a patrol car. Ms. Romero appeared bruised and beaten, had a cut above her swollen right eye, and was visibly shaken. She advised Deputy Connelly that she had been beaten and held against her will for the past day by Hernandez until she had been able to escape from his apartment. She further advised Deputy Connelly that she had been living with Hernandez during the prior two weeks and that her personal belongings were in his apartment. According to Ms. Romero, Hernandez had “lots of guns” and had told her that he “was not going to jail.”
Shortly thereafter, Ms. Romero and Deputy Connelly saw Hernandez in the parking area of the apartment complex. When Hernandez spied the deputy, he quickly walked into the corridor that led to his apartment. The deputy lost sight of Hernandez and did not see him go into his apartment. After the arrival of back-up, a police sergeant called Hernandez on his cell phone. Hernandez denied that he was in his apartment and responded “with a bunch of foul language and discontent” after the sergeant encouraged him to meet with the deputies and “resolve the situation.” Hernandez further reiterated to the sergeant that he “was not going to jail.” Reasonably believing that Hernandez was in his apartment, the deputies cordoned off the area around the apartment and waited approximately one hour for the arrival of Deputy Bradshaw and his canine partner. It was the officers’ intent to arrest Hernandez for battery and false imprisonment.[2] No effort was made to obtain an arrest warrant for Hernandez during this time period.
After Deputy Bradshaw and his canine arrived, and with the consent of Ms. Romero, the deputies entered the apartment to search for Hernandez. The evidence reflects that the sole purpose for entry into the apartment was to effectuate Hernandez’ arrest. In giving her consent to enter the apartment, Ms. Romero indicated to the deputies that there was one locked room in the apartment that she was not permitted to enter. Upon entry into the apartment, the door to that room was, indeed, locked. As part of the “protective sweep,” Deputy Bradshaw forced the locked door open, whereupon he saw a tarp in the corner of the room. He raised the tarp to ensure that no individuals were hiding underneath and observed what he believed to be marijuana plants. The deputies completed their sweep of the apartment and found several firearms, but did not locate Hernandez. Based on the cannabis discovered in the locked room, a search warrant was obtained to search the apartment. During the search initiated pursuant to the warrant, cocaine and drug paraphernalia were found in Hernandez’ kitchen cabinets.
Courts have consistently held that a warrantless search of a home is presumed illegal. Davis v. State, 834 So.2d 322, 326 (Fla. 5th DCA 2003). This presumption may be overcome if the State demonstrates that exigent circumstances existed that allowed the police to invade *705 the sanctity of the home without a warrant or that valid consent was given for the search. Id. Here, there is no contention by the State that exigent circumstances justified entry into Hernandez’ residence.
Valid consent may be obtained from one other than an owner or a named lessee of the premises. When the State seeks to justify a warrantless search by proof of voluntary consent, it may show that permission to search was obtained from a third person who possessed, or reasonably appeared to possess, common authority over or other sufficient relationship to the premises. See Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Mutual use of the property by persons with joint access is commonly recognized as a sufficient relationship to the premises to validly consent to a search. See Ferryman v. State, 919 So.2d 710 (Fla. 5th DCA 2006); State v. Purifoy, 740 So.2d 29 (Fla. 1st DCA 1999).
In the instant case, Ms. Romero, the alleged victim, advised Deputy Connelly that she had been living in the residence the prior two weeks, that her personal belongings were in the apartment, and that she was in a relationship with Hernandez. Based on these statements and the circumstances under which Deputy Connelly came into contact with Ms. Romero, we conclude that she had the apparent authority to consent to the officers’ entry into Hernandez’ apartment. See, e.g., Ferguson v. State, 58 So.3d 360 (Fla. 4th DCA 2011) (holding that defendant’s girlfriend, a co-occupant, had authority to consent to entry of officers onto premises where girlfriend’s clothes were inside apartment and she was living at apartment for past two months notwithstanding that she had not changed her address on either her license or other mailings and was not in actual possession of key when police found her in traumatized state just outside apartment); see also Kohn v. State, 69 So.3d 388 (Fla. 1st DCA 2011); United States v. McGee, 564 F.3d 136 (2d Cir.2009).
Although Ms. Romero had apparent authority to consent to entry into Hernandez’ apartment, the State acknowledges that she did not have the apparent authority to consent to a search of the locked room. See, e.g., King v. State, 79 So.3d 236 (Fla. 1st DCA 2012) (holding that defendant’s wife did not have actual authority to consent to search of defendant’s safe where she did not mutually use the safe, the safe was given to defendant by his mother, wife did not have key to safe, the safe had defendant’s personal belongings, and wife did not have any of her personal belongings inside safe).
The State argues, however, that based on the totality of the circumstances, law enforcement officers were permitted to enter the locked bedroom as part of a “protective sweep” to ensure officer safety.[3] In Maryland v. Buie, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the United States Supreme Court defined a “protective sweep” as “a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.” This limited type of search must be narrowly confined to a cursory visual inspection of those places in which a person might be hiding. Furthermore, a protective sweep may be undertaken only when the searching officer possessed a reasonable belief *706 based on specific and articulable facts which, taken together with the rational inferences from the facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others. Id.
The Florida Supreme Court recently addressed the issue of whether the Fourth Amendment permits a protective sweep where, as in the instant ease, the sweep is not incident to a lawful arrest. In Delhall v. State, 95 So.3d 134 (Fla.2012), the defendant filed a motion to suppress his statements to police on the grounds that they were obtained in violation of his Fourth Amendment rights subsequent to a war-rantless search of his apartment and what he contended was an illegal arrest made during the search.
The evidence presented at the motion to suppress hearing established that police officers, who were investigating a homicide, went to the defendant’s apartment. A car matching the description of a vehicle seen leaving the scene of the fatal shooting was parked outside the apartment. The defendant’s cousin, an occupant of the apartment, permitted the officers to enter the residence. The cousin told the officers that the defendant lived there, but was not presently home. The cousin further advised the officers that aside from the small children playing in the living room, no one else was in the apartment. The cousin agreed to talk to the officers, but refused their request to search the premises. One of the officers then became alarmed after hearing noises emanating from an adjacent bedroom. After the cousin again denied that anyone else was present, the officer heard more sounds coming from the bedroom. The officer drew his gun, went into the bedroom, and found the defendant hiding in a closet. The defendant subsequently agreed to go to the police station where he made incriminating statements that were the subject of his motion to suppress.
The defendant argued that the warrant-less search of his bedroom was not an authorized protective sweep incident to a lawful arrest. The supreme court rejected this argument and found that the officer’s entry into the defendant’s bedroom was permissible.
Under these circumstances, when Detective Bayas heard the noise, he had a well-founded, objectively reasonable, ar-ticulable fear that a person carrying a gun might be in the other room, thus posing an immediate risk to officers and occupants of the apartment. These circumstances meet the exigent circumstances requirement for warrantless entry into the bedroom and the protective search of the closet. Moreover, the search did not extend beyond what was necessary to locate the source of the noise heard by Bayas and to determine there was no immediate threat of danger.
Id. at 152.
In determining that the protective sweep of defendant’s bedroom was lawful, the court emphasized that the exigent circumstances arose after the officers’ entry into defendant’s apartment: *707 Id. at 151 (emphasis added) (citation omitted).
*706 “There is no catalog of all the exigencies that may allow a warrantless search of a residence because ‘[t]he reasonableness of an entry by the police upon private property is measured primarily by the totality of existing circumstances.’ ” These same principles apply when police are in the home lawfully, such as in this case with consent of one of the occupants, and circumstances arise that provide an objectively reasonable basis for officers to believe that there is an immediate need for protection of themselves or other occupants.
*707 The majority of the federal circuit courts confronted with this issue have similarly concluded that a protective sweep is not per se invalid merely because it does not occur incident to an arrest. Compare United States v. Miller, 430 F.3d 93, 98 (2d Cir.2005) (“We now hold that a law enforcement officer present in a home under lawful process, such as an order permitting or directing the officer to enter for the purpose of protecting a third party, may conduct a protective sweep.... ”); United States v. Martins, 413 F.3d 139, 150 (1st Cir.2005) (‘We hold, therefore, that police who have lawfully entered a residence possess the same right to conduct a protective sweep whether an arrest warrant, a search warrant, or the existence of exigent circumstances prompts their entry.”); United States v. Gould, 364 F.3d 578, 584 (5th Cir.2004) (en banc) (“[W]e hold that arrest is not always, or per se, an indispensable element of an in-home protective sweep, and that although arrest may be highly relevant, particularly as tending to show the requisite potential of danger to the officers, that danger may also be established by other circumstances.”), abrogated on other grounds by Kentucky v. King, — U.S.-,-, 131 S.Ct. 1849, 1859, 179 L.Ed.2d 865 (2011); United States v. Taylor, 248 F.3d 506, 513 (6th Cir.2001) (“[I]t follows logically that the principle enunciated in Buie with regard to officers making an arrest — that the police may conduct a limited protective sweep to ensure the safety of those officers — applies with equal force to an officer left behind to secure the premises while a warrant to search those premises is obtained.”); United States v. Patrick, 959 F.2d 991, 996 (D.C.Cir.1992) (upholding protective sweep where police obtained apartment lessee’s permission to search, because “[o]nce the police were lawfully on the premises, they were authorized to conduct a protective sweep .... ”), abrogated on other grounds by Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); United States v. Daoust, 916 F.2d 757 (1st Cir.1990) (upholding protective sweep incident to execution of search warrant), with United States v. Torres-Castro, 470 F.3d 992, 997 (10th Cir.2006) (“[W]e must conclude that a protective sweep is only valid when performed incident to an arrest — at least until an en banc panel of this court determines otherwise”).
Courts that have recognized the validity of protective sweeps not incident to an arrest have generally required the State, at a minimum, to prove the following elements:
1. The police must not have entered (or remained in) the home illegally and their presence within it must have been for a legitimate law enforcement purpose;
2. The protective sweep must have been supported by a reasonable, ar-ticulable suspicion that the area to be swept harbored an individual posing a danger to those on the scene;
3. The protective sweep must not have been “a full search” but rather a cursory inspection of those spaces where a person may be found;
4. The protective sweep must have lasted no longer than was necessary to dispel the reasonable suspicion of danger and no longer than the police were justified in remaining on the premises.
Gould, 364 F.3d at 587-88, see also Miller, 430 F.3d at 98-100; State v. Davila, 203 N.J. 97, 999 A.2d 1116, 1118-19 (2010).
In the instant case, the aforementioned elements were met. However, when the police entry into a house is based on con *708 sent, and the consent is limited in scope, additional Fourth Amendment concerns arise that are not present in cases where the initial entry is pursuant to a warrant.
For example, concerns might arise respecting a consent to entry requested for a stated common purpose but actually intended not for that purpose but rather for the purpose of gaining access in order to then make a protective sweep of the entire home for unrelated reasons and thus circumvent the warrant requirement. Concerns of a similar character might also arguably arise where the consent to entry is given expressly or implicitly only as to a limited area but the protective sweep extends clearly beyond that area without anything having developed since entry suggestive of greater or more imminent danger than that initially apparent just prior to entry.
Gould, 364 F.3d at 589.
In both Gould and Delhall, the evidence reflected that the dangerous circumstances justifying a protective search of the defendant’s bedroom (for which no consent for entry had been given) developed after officers had been permitted to enter the residence’s common areas by a co-occupant of the premises. As a result, both courts found it unnecessary to address the issue of whether a protective sweep of the defendant’s bedroom would have been permissible if the officers were fully aware of the dangerous circumstances prior to seeking consent to enter the residence from a co-occupant.
The Davila case is particularly instructive with regard to the application of the protective sweep exception to the Fourth Amendment’s warrant requirement where initial entry into a dwelling is based on consent. In Davila, six law enforcement officers went to the defendant’s apartment in furtherance of a homicide investigation. (Two homicides had occurred during a robbery spree that had taken place two days prior.) The officers were aware that they lacked probable cause to search the premises but knocked on the apartment door in the hope that someone would answer and allow them inside. An overnight apartment guest answered the door and purportedly allowed the officers to enter the apartment. Once inside, the police team dispersed throughout the residence for purposes of securing any other individuals in the apartment because of the suspicion that the occupant[s] might be implicated or connected to the homicides. During the protective sweep, inculpatory evidence was discovered.
After concluding that the existence of an arrest was not essential to the Supreme Court’s rationale for approving the use of a protective sweep in Buie, the Davila court discussed the need for courts to adopt enhanced precautions to “stem the possibility that a protective sweep is nothing more than an unconstitutional warrantless search.” Davila, 999 A.2d at 1119. Accordingly, the Davila court stressed that police “cannot create the danger that becomes the basis for a protective sweep, but rather must be able to point to dangerous circumstances that developed once the officers were at the scene” Id. (emphasis added).
The standard set forth in Davila is consistent with Delhall and properly balances the need for law enforcement officers to take reasonable steps to protect themselves from harm while performing their legal duties against “[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.” Amend. IV, U.S. Const.
The application of the aforestated standard to the instant case compels the conclusion that the officers’ entry into Her *709 nandez’ locked bedroom was violative of the Fourth Amendment. The evidence reflects a lack of exigent circumstances, given that the officers waited outside Hernandez’ apartment for at least one hour before forcibly entering the premises. As previously noted, no effort was made to obtain a warrant during this time period. It is undisputed that the officers knew there was a locked bedroom in the apartment and they lacked consent to enter such room. Thus, the dangerous circumstances arising from the potential of Hernandez hiding in the locked room were known by the officers prior to their entry into the apartment. The purported need to conduct a protective sweep of the locked room was to secure the safety of officers who would be conducting a search for Hernandez elsewhere in the apartment. Yet, the need for a warrantless protective sweep of the locked bedroom could have readily been alleviated by the procurement of a warrant.
In Homblower v. State, 351 So.2d 716 (Fla.1977), our supreme court emphasized that warrantless searches are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions. These exceptions have been carefully drawn and jealously guarded and the burden is upon the State to demonstrate the existence of one of these exceptions. Id. at 717.[4] Here, the State failed to meet that burden.
REVERSED and REMANDED.
SAWAYA, J., concurs in result only.
LAWSON, J., dissents, with opinion.

. Pursuant to the plea agreement, the accompanying charges against Hernandez for cultivation of cannabis and possession of drug paraphernalia were nolle prossed by the State. • •

. Pursuant to section 787.02(2), Florida Statutes (2008), false imprisonment is a third degree felony.

. The protective sweep exception was the State’s sole argument to justify the warrant-less search of the locked room.

. In Homblower, our supreme court held that where police had ample time after probable cause vested to secure a search warrant for a house trailer, but failed to do so, a warrant-less search for drugs undertaken after police heard suspicious movements upon knocking on the door violated the Fourth Amendment:
[The deputy] was at the police station for at least forty-five (45) minutes while the [defendant’s] brother was being booked. Certainly a search warrant could have been obtained during that period or at the very least an attempt could have been made to obtain one.
351 So.2d at 718-19.