# STATE OF FLORIDA v BRUMLEY
### Case No. 71422IY (T)
County Court, Dade County
February 22, 1991

## OPINION OF THE COURT

JONATHAN T. COLBY, County Judge.

THIS COURT having heard argument of counsel, having been briefed on the various issues of law, having engaged in legal research, and being otherwise fully advised in the premises, it is hereby ordered and adjudged as follows:

### FINDINGS OF FACT

The Court finds that:

1. On or about September 28, 1990, the defendant, John Marshall Brumley, had been a patron of Ronnie's, a nightclub located in North Miami Beach.

2. Mr. Brumley entered his vehicle, which had been parked close to Ronnie's entrance.

3. He pulled up the windows, locked the doors and turned on the air conditioner. He then went to sleep.

4. At approximately 5 A.M. uniformed officer John Crocker noticed the defendant's vehicle.

5. Crocker allegedly noticed the vehicle for the first time despite his testimony that he had been patrolling this area for the past seven hours, i.e. since 10 P.M. of September 27, 1990.

6. Crocker testified that the vehicle had been observed by him only for a matter of seconds and that Crocker then went to investigate a "suspicious set of circumstances."

7. Crocker testified that he saw exhaust emanating from the defendant's vehicle. In the next breath, he stated that he investigated because he believed that an occupant might be committing suicide via carbon monoxide poisoning. Obviously his observations and rationale are mutually exclusive and logically in opposite.

8. The officer testified that he next pounded on the vehicle's window and that the occupant groggily woke up. Obviously the occupant was alive.

9. Up to and including this time, no crime had occurred, and no articulable suspicion of wrongdoing had been formulated by officer Crocker vis a vis the defendant.

10. Officer Crocker testified that he does not issue traffic tickets for parking violations.

11. Officer Crocker did not seek the defendant's identification. Instead he claims that he smelled alcohol and ordered the defendant out of the vehicle. Subsequent to this seizure he ordered the defendant to perform a roadside test.

12. The defendant allegedly did not pass his finger to his nose test. No other tests were requested of the defendant. The defendant was arrested and transported.

13. Subsequent to the defendant's arrest, there was a video taping and a breath sample collected.

### APPLICATION OF LAW

Where officers see a speeding car spin off the road into a ditch in the dark of night, they would be derelict in their duty if they did not investigate. *Michigan v Long,* 463 U.S. 1032 (1983). But such investi-

gation follow-up does not, without more, justify a protective search of the passenger compartment. *Long,* supra. The *Long* Court stated:

> "We stress that our decision does not mean that the police may conduct automobile searches whenever they conduct an investigative stop. . . We require that officers who conduct area searches during investigative detentions must do so only when they have the level of suspicion identified in *Terry. Long* supra n. 11, at 1049 n. 14

In the matter sub judice, the officer testified that he had no *Terry v Ohio* articulable suspicions of wrongdoing. Yet, this officer seized and "temporarily" detained the defendant. The officer ordered the defendant to open the window and subsequently seized the allegedly alcohol laden air from the passenger compartment. The officer did not have a right to be where he was at the time of the seizure, thus a plain "view" argument is clearly without merit.

The law is clear that unless the officer can point to specific facts reasonably justifying a protective search (not a fishing expedition), the fruits of the search are suppressible. *State v Brown,* Drim. File No. 21738 (GA Super Ct.) Clearly, officer Crocker could provide no such facts justifying his actions until after said actions took place. An Ex Post Facto application has no place in a Fourth Amendment analysis. See also *Anderson v State,* 16 FLW264 Feb. 1, 1991.

The test for this type stop is known as the Cruz test and it has been generally followed in courts throughout the land. *United States v Hawkins,* 811 F.2d 210 (3d Cir. 1987), *United States v Smith,* 799 F.2d 704 (11th Cir. 1986). This test is an objective one. The critical inquiry is not whether an officer could have validly stopped the car in question for a possible traffic violation but whether the officer would have done so under all the circumstances. Thus, where a court finds a particular stop to be pretextual, any fruits of an ensuing detention or subsequent seizure must be suppressed.

In the matter sub judice, this Court finds that:

1. Officer Crocker does not give traffic tickets.

2. A reasonable officer would not have stopped and seized the defendant's vehicle and the defendant under the circumstances.

3. There existed an ulterior motive in Crocker's mind vis a vis John Brumley.

4. Hindsight should not be coloring the evaluation of the reasonableness of a search or seizure. *U.S. v Martinez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074 (1976). Conduct constituting a mere acquiescence to police

authority cannot constitute a valid waiver on a citizen-police encounter. *See Major v State,* 389 So.2d 1203 (3d DCA 1980), *State v Gausz,* 197 So.2d 614 (1974), *U.S. v Jones,* 641 F.2d (6th DCA 1981).

5. Concomitantly, all fruits must be suppressed. *Wong Son v U.S.,* 371 U.S. 471 (1963), *Pomerantz v State,* 372 So.2d 104 (3d DCA 1979), *D'Agostino v State,* 310 So.2d 12 (Fla. 1975).

## CONCLUSION

The defendant's MOTION TO SUPPRESS is granted in toto.

2/22/91