LETTS, Chief Judge.
Involved here is the search of an unoccupied aircraft which first landed at the air *1096 port at 2:30 a. m. and then taxied to a private flight service area where it was parked, partially blocking ramp access. Five men exited the plane and shortly thereafter left in a taxi cab. An employee of the private flight service saw smoke coming from the landing gear and because of the plane’s position and because of the risk of fire, the employee called two deputy sheriffs assigned to airport security who, upon arrival, saw said employee using a fire extinguisher on the smoking gear from which an electrical type burning smell was emanating. In addition they noticed that one of the interior lights of the plane was on and a decision was made to enter the aircraft for the sole purpose of making sure that the master electrical switches were off, to obviate fire or explosion. The first deputy, upon opening the door to the unlocked cockpit, observed in plain view numerous bales from which came a strong odor of marijuana. In fact the plane was loaded with 12,000 pounds of cannabis and 36,000 quaaludes. The trial judge granted a motion to suppress the search. We reverse.
Without extended legal discussion and citations, it is obvious that the deputy could have immediately seized the plain-view contraband. Indeed the trial judge, in his order granting the motion to suppress, agreed citing Castle v. State, 305 So.2d 794 (Fla. 4th DC A 1974). However, the trial judge was of the opinion that the deputy in fact did not immediately seize the contraband, but instead participated in a departmental decision to set up a surveillance of the plane hoping to catch any of the five suspects who might return. Obviously mechanism could have been set in motion during the delay to obtain a warrant, but this was not attempted.
As it turned out, this surveillance was to no avail and since none of the suspects returned, the police later conducted a war-rantless detailed search of the plane. By the trial judge’s view of it:
“they could have readily obtained a search warrant based on the probable cause given them by [the first deputy on the scene], but consciously chose not to do so. They had plenty of time to obtain a warrant — the plane would not depart due to the surveillance. As it was they waited six and one-half hours before they conducted the search. They chose the time to make the search — they could have waited even longer. As the hours ticked away, the defendants’ constitutional right against a warrantless search and seizure became viable and inviolate.”
To support this conclusion the trial judge relied on Hornblower v. State, 351 So.2d 716 (Fla.1977). However, while Hornblower certainly confirms the general rule, that if time to get a warrant exists, the enforcement agency must use that time to obtain one, Hornblower also notes that an exception to that rule is “plain-view situations which remove the need for a warrant.. . . ”
Applying the above quoted language from Hornblower to the present situation, it appears to us that this was a plain-view situation which did remove the need for a warrant. Certainly, as the trial judge himself conceded in the order, there was nothing wrong, under the circumstances, with the deputy climbing up and entering into the plane. Upon doing so he plain-viewed, and plain-smelled bales of marijuana, and this being so it would appear to us that the requirement of a warrant was obviated no matter how long they kept the plane under surveillance. In other words, recognizing the initial plain-view exception, the mere passage of time, during which the police surrounded the scene and continued surveillance in plain-view of the contraband hoping to catch the suspects, did not in and of itself destroy and cancel out the exception.[1]
The testimony is that as soon as the two deputies smelled and saw the bales, the crime scene detective arrived followed by three or four others all of whom set up around the airplane and waited in ambush *1097 to see if anybody returned. In this respect one of the officers was asked the following question at the hearing:
Q “You wouldn’t let them take the airplane away, would you?”
A “No Sir.”
It is perfectly obvious that from the time the officers arrived and surrounded the contraband they had in effect seized it and were not about to let it be taken away. The only thing they failed to do was cata-logue it and physically remove it. They did not leave the scene with the thought of returning later to re-inspect the plane and its contents. They actively and continuously surrounded the contraband and lay in wait hoping that the suspects would return so that they could nab them as well as the contraband. Such delay in the actual physical inventory and transportation of the contraband does not appear to bely a seizure and certainly is not sufficient to negate the plain-view exception which existed in this situation. To this end we believe Castle v. State, supra, supports our view. To be sure, in Castle, as the trial judge noted here, there was the additional factor that the suspects had abandoned the boat before it was searched, whereas abandonment of the instant plane could not be presumed. However the holding of Castle was to the effect that the mere passage of time did not invalidate the warrantless search because the fire chief remained continuously on the scene for two hours. We agree.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE HEREWITH.
DOWNEY and BERANEK, JJ., concur.

. We note and find important, the factual distinction in Hornblower where the police left the scene and later returned.