Matthew MIDDLETON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 85S02–9812–CR–764.

Supreme Court of Indiana.

June 29, 1999.

Katharine C. Liell, Teresa D. Harper, Bloomington, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James D. Dimitri, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This case involves the "plain view" doctrine: if a police officer is properly in the residence of another and sees items that may be seized under the doctrine but leaves the home without them, may the officer then return to seize the items without first obtaining a search warrant? We conclude that, in the absence of exigent circumstances or some other exception to the warrant requirement, such a seizure is prohibited by the Fourth Amendment to the United States Constitution.

### Factual and Procedural Background

On June 4, 1997, realtor Pat Rowans showed a house in Wabash to prospective buyer Richard "Sam" Hipskind and his fiancee. Hipskind was a probationary police officer who had not yet been to the police academy. While inspecting the home, Hipskind saw what he took to be marijuana on a nightstand in an upstairs bedroom, along with seeds, stems, rolling papers and scales. According to Rowans, Hipskind said he was going to confiscate the marijuana but changed his mind after she told him that he could not. Hipskind attempted to radio other officers from inside the house, but was unsuccessful. He then left the house and radioed for assistance from his police vehicle parked nearby. Rowans and Hipskind's fiancee left the house a "minute or two" after Hipskind, locking the front door and leaving the back door unlocked as it had been when the three arrived.

Several police officers arrived within two or three minutes and, after discussing the matter, decided to enter the residence. Rowans testified that she requested that the officers not go into the house. Hipskind did not recall either Rowans' initial objection to his seizing the items or her request that the group of officers not enter the home, but did not dispute that either occurred. After discussing the matter further, and while Rowans was in her car telephoning the owner of her realty company, the officers entered the home through the unlocked back door and seized the items.

Eighteen-year-old Matthew Middleton, the occupant of the upstairs bedroom, was subsequently charged with possession of marijuana, visiting a common nuisance, and possession of paraphernalia. He moved to suppress the evidence obtained during the warrantless search. After a hearing, the motion was denied. The trial court reasoned that:

> the officer saw contr[a]band in plain view from a position within the house where he had a right to be. The officer never left the home area while calling his superiors for assistance. He had a right to re-enter and seize the contr[a]band and the related paraphernalia. The Defendant['s] rights

to be free from unreasonable search and seizure were not violated due to the plain view exception to the need to obtain a search warrant.

The order on the motion to suppress was certified for interlocutory appeal and a divided panel of the Court of Appeals affirmed the trial court in an unpublished memorandum decision. We granted transfer.

### The Seizure under the Federal Constitution

 Under the federal constitution, searches and seizures "conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted). The State carries the burden of demonstrating that a warrantless search or seizure falls within one of the exceptions. *Taylor v. State,* 659 N.E.2d 535, 537 (Ind.1995). In this case there is no dispute as to the material facts.

### A. *The Plain View Doctrine*

 The trial court found that the warrantless search was justified based on the plain view doctrine. Three conditions must exist to justify the warrantless seizure of evidence under this doctrine: (1) "the officer [must] not have violate[d] the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; (2) the "incriminating character" of the evidence must be "immediately apparent"; and (3) the officer must "have a lawful right of access to the object itself." *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Houser v. State,* 678 N.E.2d 95, 101 (Ind.1997) (citing *Horton* ). Each of these conditions would have been met if Hipskind had seized the items immediately. But that did not occur. Hipskind, commendably sensitive to the rights of the homeowners and apparently uncertain as to the applicable law, elected to retreat. The seizure of the contraband then occurred after

the officers' warrantless reentry into Middleton's home.

 Although the U.S. Supreme Court has not addressed the specific issue before us, both its plain view precedents and sound policy considerations lead us to conclude that the warrantless seizure in this case violated the Fourth Amendment. The trial court found the plain view doctrine applicable because Hipskind never left the "home area." For purposes of the Fourth Amendment, however, the threshold of a home is the line that law enforcement officers cannot transgress without judicial authorization. "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Plain view does not alter this basic tenet. The doctrine permits seizure of items viewed from a lawful vantage point but does not legitimize a warrantless presence. As explained in *Texas v. Brown,* where Justice Rehnquist wrote for the four-member plurality of the Court, "if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately." 460 U.S. 730, 739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Although an officer has the option not to seize evidence perceived in plain view, this language suggests that the seizure must occur immediately, if it is to occur at all. Nothing suggests that having once viewed the item, the officer may seize it at any time in the future. Indeed, the seizure of contraband occurred as soon as it was identified in each of the relevant cases cited in support of this proposition in *Brown.* See *Frazier v. Cupp,* 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *United States v. Lefkowitz,* 285 U.S. 452, 458–59, 52 S.Ct. 420, 76 L.Ed. 877 (1932); *Go–Bart Importing Co. v. United States,* 282 U.S. 344, 349–50, 51 S.Ct. 153, 75 L.Ed. 374 (1931); *Marron v. United States,* 275 U.S. 192, 194, 48 S.Ct. 74, 72 L.Ed. 231 (1927).[1] The same is true of

---

1. The Court also cites *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968),

the plain view cases decided after *Brown. See, e.g., Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (applying the plain view doctrine to contraband detected through the sense of touch); *Horton,* 496 U.S. at 131, 110 S.Ct. 2301; *Arizona v. Hicks,* 480 U.S. 321, 323, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).[2]

The rationale of the plain view doctrine points in the same direction as these precedents. The basis for permitting a seizure under the plain view doctrine is essentially that the officer is where he or she is for other valid reasons. *See Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Accordingly, there is no purpose to be served in refusing the officer permission to seize items meeting the *Horton* standard. But the officer's knowledge or conviction that evidence of a crime is to be found in a house is no basis for eliminating the requirement of a warrant. Once police officers leave a home where they believe they saw evidence in plain view, they are in essentially the same position as any officer with reliable information that contraband is in a residence. In the absence of exigent circumstances or one of the other recognized exceptions, the proper measure, and the only constitutional measure, is to obtain a warrant.

■ As a variant on its plain view contentions, the State argues that Middleton "had no reasonable expectation of privacy in a house he opened to the public." Indeed, Middleton concedes that he did not have a reasonable expectation of privacy as to items left in open view during Rowans' visit. However, the expectation of privacy in one's home, although surrendered to permit the viewing of the house by prospective buyers, is not forever lost. Once Hipskind left the premises, the same considerations for a bright line rule resurrected the expectation of privacy in the home.

in which the seizure of evidence did not occur immediately upon its plain viewing. In that case, the defendant's automobile was impounded as evidence upon his arrest. A search was performed pursuant to police regulation to protect the car while it was in police custody. *Id.* at 235, 88/ S.Ct. 992. A registration card with the robbery victim's name on it was found in plain view on the metal stripping over which the door closes. The officer did not seize the card, but rather returned to the precinct, brought the defendant to the car, and confronted him with the registration card. After the defendant disclaimed all knowledge of the card, the officer seized it. The Court held that the card was admissible because it was found in plain view and its discovery was not the result of a search aimed at finding the card or otherwise invading the owner's reasonable expectation of privacy but rather was the product of an otherwise lawful measure taken to protect the car while it was in police custody. The Court did not address the timing of the seizure of the card in relation to its discovery. However, reentry of an impounded vehicle under police control is quite different from reentry of an individual's home under federal Fourth Amendment doctrine. *See generally* 3 Wayne R. LaFave, Search and Seizure § 7.5(c) (3rd ed. 1996 & Supp.1999) (discussing the "[d]elayed or renewed examination of objects in police custody" under the Fourth Amendment). *Cf. Brown v. State,* 653 N.E.2d 77, 79–80 (Ind. 1995) (discussing the status of automobiles under Article I, Section 11 of the Indiana Constitution).

**2.** We acknowledge that a few intermediate appellate courts in other states have interpreted the plain view doctrine more expansively, allowing the seizure of evidence some time after its sighting in plain view. *See People v. Lucero,* 720 P.2d 604, 607 (Colo.Ct.App.1985) ("The fact that the officers did not immediately seize the evidence in plain view does not affect its admissibility in this case. Defendant made immediate seizure impossible when he became agitated and abusive toward the officers after their initial plain view discovery of some of the evidence."); *State v. Johnson,* 403 So.2d 1095, 1096 (Fla.Dist.Ct.App. 1981) ("recognizing the initial plain-view exception, the mere passage of time, during which the police surrounded the scene and continued surveillance in plain-view of the contraband hoping to catch the suspects, did not in and of itself destroy and cancel out the exception"); *State v. Campbell,* 581 N.W.2d 870 (Minn.Ct.App.1998) (police officer was invited into defendant's home to investigate shots being fired, plainly viewed contraband which was subsequently moved, but then discovered the contraband in a new location after he continued to look for evidence of the shooting). Middleton's case is nonetheless distinguishable from each of these cases. In *Lucero,* the officers were unable to effectuate immediate seizure of the contraband due to the defendant's agitation and abusiveness; Middleton was not at home and could not present any resistance. In *Johnson,* the police remained in a position where they could continue to view the contraband. Finally, in *Campbell,* the officer never left the home and the initial consent given by the defendant to investigate the shots fired into his home was uninterrupted.

■ In sum, the bright line rule of the threshold of a residence remains inviolate. Police officers lawfully in a residence may immediately seize items found in plain view that satisfy the conditions of *Horton*. But if an officer leaves the residence, reentry is not justified in the absence of a warrant, the consent of the owner, or some other exception to the warrant requirement. The reasons for requiring judicial oversight of searches and seizures are firmly established in our federal and state constitutions. *See, e.g., Coolidge*, 403 U.S. at 467, 91 S.Ct. 2022; *Brown v. State*, 653 N.E.2d 77, 80 (Ind.1995). They are fully applicable once a police officer has left the residence. Requiring a warrant under the circumstances of this case is a minimal burden in light of the magnitude of the privacy interest at stake. Indeed, during cross-examination, Hipskind agreed that it would take "about 10 minutes to type in [the] 4 or 5 sentences" necessary to secure a warrant.[3] Because the officers violated the Fourth Amendment by reentering Middleton's home, the plain view doctrine cannot be invoked to justify the warrantless seizure of evidence taken during that reentry. *See Horton*, 496 U.S. at 136, 110 S.Ct. 2301.

### B. *Exigent Circumstances*

■ As an alternative to the plain view doctrine, the State also argues the seizure was justified by exigent circumstances. "Exigent circumstances justifying a warrantless search exist where the police have an objective and reasonable fear that the evidence is about to be destroyed...." *Esquerdo v. State*, 640 N.E.2d 1023, 1027 (Ind. 1994) (quoting *Harless v. State*, 577 N.E.2d 245, 248 (Ind.Ct.App.1991)). The State notes that the house was listed on the market and that "Rowans or another agent could have shown it to other prospective buyers, any one of whom could have picked up the contraband." In addition, the State points out that after the officers left the house and returned for a third time with a warrant, they found

that a vacuum cleaner had been run and the table top had been washed. Both of these purported exigencies, however, overlook the fact that Hipskind and the other officers were able to secure the area for the few minutes necessary to obtain a warrant. Securing the house eliminates any risk of destruction of evidence. If Middleton had returned home in the minutes needed to secure a search warrant, the police could have asked him to remain outside. If he refused and entered the house, exigent circumstances may then have justified the warrantless seizure of the contraband. *Cf. Esquerdo*, 640 N.E.2d at 1027–28 (finding no exigent circumstances because the marked money and "other drugs were bottled up in the house, and there is little reason to believe that its occupants were alerted to the existence of the undercover operation"). None of these events transpired, however. Indeed, neither the trial court nor the Court of Appeals' majority mentioned exigent circumstances as a basis for avoiding the need for a warrant.

In sum, neither the plain view doctrine nor the exigent circumstances exception to the warrant requirement justifies the seizure of contraband during the second entry into Middleton's home. Accordingly, under the federal constitution, the evidence must be suppressed. Middleton also contends that the seizure constituted a violation of Article I, Section 11 of the Indiana Constitution. In light of our resolution of his federal constitutional claim, there is no need to address whether the seizure also violated the state constitution.

### Conclusion

This case is remanded to the trial court with instructions to grant Middleton's motion to suppress.

DICKSON, SULLIVAN and SELBY, JJ., concur.

SHEPARD, C.J., concurs with separate opinion.

---

3. After the warrantless seizure at issue in this case, Hipskind secured a warrant based on his viewing of the marijuana and scales during his first visit to the house. It is axiomatic that obtaining a warrant after the warrantless seizure of evidence does not transform an otherwise un-

constitutional seizure into a constitutional one. *See Katz*, 389 U.S. at 357, 88 S.Ct. 507 (searches and seizures "conducted outside the judicial process, without *prior* approval by judge or magistrate, are *per se* unreasonable ....") (emphasis added).

SHEPARD, Chief Justice, concurring.

I join fully in the Court's opinion and write separately to observe that the Fourth Amendment violation in this case led solely to suppression of certain items of physical evidence. The State is still free to present Officer Hipskind's testimony that he observed those pieces of evidence during his initial entry into the house as it pursues the prosecution of Middleton.