**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 22 2013, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CANDACE HERNTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1211-CR-548 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable James Osborn, Judge
Cause No. 49F15-1202-FD-9303

**May 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Candace Hernton appeals her conviction of Possession of Marijuana,[1] a class A misdemeanor, and Failure to Stop After an Accident Not Resulting in Injury,[2] a class C misdemeanor. Hernton presents the following restated issues for review:

1. Did the trial court err in denying Hernton's motion to suppress evidence?

2. Was the evidence sufficient to support the conviction for possession of marijuana?

3. Was the evidence sufficient to support the conviction for failure to stop after an accident?

4. Did the trial court err in ordering Hernton to perform community service as a part of her sentence?

We affirm.

The facts favorable to the convictions are that on February 9, 2012, Brandon Leavell was driving in the left lane northbound on Post Road in Indianapolis when his car was struck on the right side by a car that was overtaking him from behind. The impact caused extensive damage to the passenger side of Leavell's vehicle. Leavell could see that the driver of the other car was a woman, later identified as Hernton, and that she had a male passenger, whom Hernton later identified as a Mr. Davis. Leavell pulled his car to a stop at the side of the road. Davis got out of Hernton's car, approached Leavell, and informed him that the two (i.e., Davis and Hernton) had been drinking earlier and that they were arguing when the collision occurred. He told Leavell that the driver's name was Candace. Davis then turned

---

[1] Ind. Code Ann. § 35-48-4-11 (West, Westlaw current through P.L.76 with effective dates through April 15, 2013).
[2] Ind. Code Ann. § 9-26-1-2 (West, Westlaw current through P.L.76 with effective dates through April 15, 2013).

and started walking northbound on Post Road. The woman drove up to Davis and told him he needed to get into the car, but he refused to do so. The driver turned her car around and drove off south-bound on Post Road. Leavell drove to his nearby home and called police. When they responded to his house, he told them a white Buick LeSabre driven by an African-American female had struck his vehicle and left the scene without exchanging information.

Officer Kelly Frame was patrolling in the area that night when she received a broadcast advising of a hit-and-run accident involving a white Buick LaSabre being driven by an African-American female. While sitting at a stop light, she observed a vehicle matching that description parked at a gas station. The vehicle had sustained damage to the left-front corner of the vehicle, continuing down the left side, extending as far back as the rear passenger door. Officer Frame approached the vehicle and the driver started to get out, but she ordered the driver to remain inside the car. The driver complied. When the officer reached the vehicle, she told the driver to get out and then placed her in handcuffs. The officer noticed that the woman was nervous and acted erratically. While in handcuffs, the driver pulled down her pants and urinated on the parking lot.

Officer Clayton Goad also heard the dispatch broadcast of the hit-and-run accident. When he heard over his radio that officer Frame had arrested a suspect, he went to the scene to assist. When he arrived at the scene, Officer Goad inspected the damage on Hernton's vehicle to ascertain whether the damage was consistent with the details of the earlier hit-and-run accident that were known to him. He determined that they matched. He then spoke with the driver – Hernton – who informed him that she was in the vehicle when the accident

3

occurred, but that she was not driving the vehicle at the scene. Officer Goad walked around the car and looked in the windows. He saw "a couple small plastic baggies" that he believed had marijuana in them. *Transcript* at 22. The baggies were located inside on the driver's door handle. By that time, Officer Vinson Boyce arrived on the scene to assist in the investigation. He called for an evidence technician to come to the scene and photograph the suspected baggies of marijuana. When they had completed their task, Officer Boyce collected the baggies, placed them in a heat-sealed envelope, and transported it to the property room. Subsequent testing revealed that the baggies contained 1.85 grams of marijuana.

The next day, Hernton was charged with criminal confinement, possession of marijuana, as a class A misdemeanor, and failure to stop after an accident resulting in property damage, as a class C misdemeanor. After a bench trial, Hernton was found guilty of the latter two offenses. At the sentencing hearing, Hernton asked the trial court to place her on probation, impose 24 hours of community service, and find her indigent with respect to fines and costs. The trial court sentenced her to concurrent terms of 365 days for each offense, with 361 days suspended on the possession offense and 356 days suspended on the traffic offense. The court placed Hernton on probation for 361 days. The court also ordered Hernton to complete 24 hours of community service in lieu of probation.

1.

Hernton contends the trial court erred in denying her motion to suppress the marijuana because the search of her vehicle was conducted in violation of the Fourth Amendment of the

4

United States Constitution, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures", and in violation of article 1, section 11 of the Indiana Constitution.

Under the federal Constitution, "searches and seizures 'conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" *Middleton v. State*, 714 N.E.2d 1099, 1101 (Ind. 1999) (quoting *Katz v. U.S.,* 389 U.S. 347, 357 (1967) (footnote omitted)). The State bears the burden of proving that a warrantless search or seizure falls within one of the exceptions. *Middleton v. State*, 714 N.E.2d 1099. One exception to the warrant requirement is the plain-view doctrine.

Three conditions must exist in order to justify the warrantless seizure of evidence under the plain-view doctrine. First, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. *Edwards v. State*, 762 N.E.2d 128 (Ind. Ct. App. 2002), *aff'd on reh'g,* 768 N.E.2d 506, *trans. denied*. Second, the incriminating character of the evidence in question must be immediately apparent. *Id*. "Immediately apparent" in this context is satisfied if law enforcement officials "have probable cause to believe the evidence will prove useful in solving a crime." *Id*. at 135. To satisfy this element, however, it is not necessary that the officer "know" the item is evidence of criminal behavior. *Taylor v. State,* 659 N.E.2d 535, 539 (Ind. 1995). Instead, "[p]robable cause requires only that the information available to the officer would lead a person of reasonable caution to believe the items could be useful as

5

evidence of a crime." *Edwards v. State*, 762 N.E.2d at 135-36 (quoting *Taylor v. State,* 659 N.E.2d at 539). Third, the officer "must 'have a lawful right of access to the object itself.'" *Id*. at 135 (quoting *Middleton v. State,* 714 N.E.2d at 1101).

Hernton concedes that the officers did not violate the Fourth Amendment in standing beside her car, which was parked on a gas station parking lot. Thus, the first element is met. Hernton contends the second element cannot be established. She explains: "While the officers claimed that contents of the baggies were apparent, a review of the photo exhibit submitted by the State during the bench trial, clearly demonstrates the contents of the baggies could not have been determined without removal from inside of the car and closer examination." *Appellant's Brief* at 11. This amounts to a claim that the photograph of the evidence taken on the night of Hernton's arrest belies Officer Goad's testimony that it appeared to him the baggies contained marijuana.

We have viewed the photograph in question. The portion of the photo in which the baggies appear is slightly out of focus and therefore does not provide a good basis for evaluating what Officer Goad might have been able to detect in that regard on the night of Hernton's arrest. To the extent the baggies can be discerned, the photo certainly does not flatly contradict Officer Goad's testimony that the baggies appeared to him to contain marijuana. In any event, this entire line of inquiry implicates the credibility of a witness. Our Supreme Court long ago stated, "we will not, on appeal, weigh the evidence nor determine the credibility of witnesses." *McAfee v. State*, 259 Ind. 687, 689, 291 N.E.2d 554, 556 (1973). That rule has not changed. Therefore, we cannot say as a matter of law that the

6

incriminating character of the baggies was not immediately apparent to Officer Goad. We will not second-guess the trial court's determination that his testimony in that regard was credible. Accordingly, the second element is met.

Hernton's argument with respect to the third element, i.e., that the officer who seized the baggies must have had a lawful right of access to the baggies themselves, depends entirely upon prevailing in his challenge to the second element, viz.: "Third, because the contents could not immediately be recognized as contraband the officers had no lawful right to seize it." *Appellant's Brief* at 11. Our conclusion with respect to the second element renders false the premise of Hernton's argument on the third element. Therefore, her argument concerning the third element fails as well.

We conclude that all three elements of the plain-view exception were present and therefore that the denial of Hernton's motion to suppress was consistent with the Fourth Amendment.

We turn now to Hernton's claim under article 1, section 11 of the Indiana Constitution. Our Supreme Court has clarified that this provision is "triggered only when the government engages in a search." *Lewis v. State*, 949 N.E.2d 1243 (Ind. 2011). In *Lewis*, a police officer observed a handgun in a car when he stuck his head into the vehicle through the open driver's door in order to inform the passenger that the driver was being placed under arrest. The defendant later challenged the admissibility of the handgun under article 1 section 11 as the product of an illegal search. Our Supreme Court rejected this argument, explaining,

7

"A 'search' involves an exploratory investigation, prying into hidden places, or a looking for or seeking out." *Hardister v. State,* 849 N.E.2d 563, 572 (Ind. 2006). Nothing like that occurred here. We stated long ago that "[i]t is not a search in any legal or colloquial sense for an officer to look into an automobile standing on the roadside." *Koscielski v. State,* 199 Ind. 546, 549–50, 158 N.E. 902, 904 (1927). Since then we have held multiple times that there is no search when police look into cars during traffic stops. *E.g., Alcorn v. State,* 255 Ind. 491, 265 N.E.2d 413 (Ind.1970).

*Id*. at 1246.

In the present case, Officer Goad approached Hernton's vehicle while investigating a hit-and-run accident. The car was parked on a gas station parking lot at the time. He observed the baggie in plain view when he looked in the window as he was walking around the vehicle to determine whether it might have been involved in the hit-and-run. The Court noted in *Lewis*, concerning the challenged evidence in that case, that the officer did not "open any compartments, move any objects, or pull anything to see the gun. It was just there." *Id*. The same is true of the baggies in this case. Officer Goad was not searching Hernton's vehicle when he discovered the baggies, therefore article 1, section 11 does not apply. The trial court did not err in denying Hernton's motion to suppress.

2.

Hernton contends the evidence was insufficient to support her conviction of possession of marijuana, as a class A misdemeanor. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. "[W]e affirm if there is substantial evidence of probative value supporting each

8

element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind. 2004).

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (some citations omitted).

A person commits possession of marijuana as a class A misdemeanor if he or she knowingly or intentionally possesses marijuana. I.C. § 35–48–4–11. A defendant, however, need not be caught red-handed in order to be convicted for a possessory offense. *Gray v. State,* 957 N.E.2d 171 (Ind. 2011). When the State cannot show actual possession, as in the present case, a conviction may rest upon proof of constructive possession. *Id.* "A person constructively possesses contraband when he has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it." *Id.* at 173. To demonstrate that the defendant was capable of maintaining dominion and control, the State must show that the defendant was able to reduce the controlled substance to his or her personal possession. *Grim v. State,* 797 N.E.2d 825 (Ind. Ct. App. 2003). Proof of a possessory interest in the premises in which contraband is found is adequate to show the capability to maintain dominion and control over the items in question. *Gray v. State,* 957 N.E.2d 171.

Hernton contends her possession of the car on the evening in question was not exclusive. Even where possession of the premises is non-exclusive, the trier of fact may infer that a party in possession of the premises is capable of exercising dominion and control over all items on the premises. *Id.*

Turning now to the intent element of constructive possession, our Supreme Court has

explained:

> A trier of fact may likewise infer that a defendant had the intent to maintain dominion and control over contraband from the defendant's possessory interest in the premises, even when that possessory interest is not exclusive. [*Glee v. State,* 810 N.E.2d 338 (Ind. 2004)]. When that possessory interest is not exclusive, however, the State must support this second inference with additional circumstances pointing to the defendant's knowledge of the presence and the nature of the item. *Id.* We have previously identified some possible examples, including (1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns. *Id.* (citing *Henderson*, 715 N.E.2d at 836); *see also Carnes v. State,* 480 N.E.2d 581, 586 (Ind. Ct. App. 1985) (list not exhaustive as other circumstances could just as reasonably demonstrate requisite knowledge).

*Id*. at 174–75.

There is no dispute that Hernton had a possessory interest in the car in which the marijuana was found. The car was hers, and she was alone in the car when she drove it to the gas station after the accident. As for the intent element, the marijuana was found in plain sight and was located almost literally at her left elbow while she was driving. This was sufficient to establish the intent element of constructive possession. The decision whether to believe Hernton's claim that the marijuana belonged to Davis and had been placed there by him was the trial court's to make, and we will not second-guess its determination in that regard. *Bailey v. State*, 979 N.E.2d 133. The evidence was sufficient to support the conviction of possession of marijuana.

3.

Hernton contends the evidence was insufficient to support her conviction of failure to

stop after an accident resulting in property damage, as a class C misdemeanor.

I.C. § 9-26-1-2 sets out the duties of a driver who has been involved in an accident that does not involve bodily injury or death but does involve property damage, as follows:

(1) Immediately stop the motor vehicle at the scene of the accident or as close to the accident as possible in a manner that does not obstruct traffic more than is necessary. If the accident occurs on a federal interstate highway, or on a ramp providing access to or from a federal interstate highway, the driver shall, as soon as safely possible, move the motor vehicle off the highway or ramp to a location as close to the accident as possible in a manner that does not obstruct traffic more than is necessary.

(2) Immediately return to and remain at the scene of the accident until the driver does the following upon request:

(A) Gives the driver's name and address and the registration number of the motor vehicle the driver was driving.

(B) Gives the names and addresses of the owner and any occupants of the motor vehicle the driver was driving, if the names or addresses are different from the name and address provided under clause (A).

(C) Provides proof of financial responsibility (as defined in IC 9-25-2-3) for the motor vehicle.

(D) Exhibits the driver's license of the driver to the driver or occupant of or person attending each vehicle involved in the accident.

Hernton contends she complied with these requirements because she drove to the nearest gas station only because she did not have a phone (she claims Davis walked away with it when he left the scene on foot) and she needed to call the police and report the accident.

Nothing in I.C. § 9-26-1-2 authorizes a driver involved in a property-damage accident to *leave* the scene of the accident. Subsection (1) does permit a driver to physically move at the scene of an accident, but only to the extent necessary to prevent becoming an obstruction

11

to other motorists operating in the immediate vicinity. There is no indication that Hernton could not have accomplished this by pulling to the side of the road at the scene of the collision. In fact, this is precisely what Leavell did. In short, Hernton did not have to leave the scene of the accident in order to avoid obstructing traffic, much less drive to a gas station located several blocks away.

We note Hernton's claim that in driving to the gas station, she "was trying to do the right thing by notifying law enforcement that an accident had occurred." *Appellant's Brief* at 20. What Hernton was attempting to do by traveling to the gas station is open to speculation. After considering the evidence, however, the trial court determined that in doing so, she knowingly or intentionally left the scene of her collision with Leavell without fulfilling her duties under I.C. § 9-26-1-2. The evidence supports that conclusion. Therefore, the evidence is sufficient to support her conviction of failure to stop after an accident resulting in property damage.

4.

When pronouncing sentence, the trial court stated the following:

Okay, the Court – having heard the evidence presented by counsel and the arguments of counsel – will now enter the following sentence: As to the A Misdemeanor Possession of Marijuana, I will sentence Ms. Hernton to 365 days, four days executed, four days credit, 361 days suspended and on probation. She's to complete substance abuse evaluation and treatment and follow all recommendations; she's to complete twenty-four hours of community service work – that'll be in lieu of fines and costs. And she's to have no contact with Brandon Leavell ... and upon successful completion of the terms of her prob – *probation will terminate* upon successful completion of all terms. Restitution can be pursued civilly – the Court will not order restitution. And probation – upon acceptance from St. Joe County – can be transferred to St. Joe County. As to the C misdemeanor, she'll be sentenced to

12

60 days, four days executed, four days credit, 56 days suspended. That will be served concurrent with, or at the same time as, the sentence for the possession case.

*Appellant's Appendix* at 60-61 (emphasis in original). Hernton contends the trial court erred in imposing community service as part of her sentence. She argues that there is no statutory authorization to impose community service in lieu of fines and costs.

There is recent authority for the proposition that a trial court may not impose community service in lieu of fines and costs for an indigent defendant. In *Vaughn v. State*, 982 N.E.2d 1071 (Ind. Ct. App. 2013), a different panel of this court reversed an imposition of community service upon its conclusion that no statute specifically authorizes a court to impose a community service requirement in lieu of costs and fees. We note, however, that the trial court imposed community service on two bases – one in lieu of costs, and the other as a condition of probation. The abstract of judgment included the community service requirement as a condition of probation, although in doing so it repeated the same potentially problematic language, i.e., "24 HOURS CWS IN LIEU OF FINES AND COSTS[.]" *Appellant's Appendix* at 14. The Order of Probation, however, lists community service as a special condition of probation, without any mention of it being imposed in lieu of fines and costs.

Ind. Code Ann. § 35-38-2-2.3(a)(14) (West, Westlaw current through P.L.76 with effective dates through April 15, 2013) provides: "As a condition of probation, the court may require a person to do … the following: Perform uncompensated work that benefits the community." Pursuant to this provision, the court was statutorily authorized to order Hernton

13

to perform community service as a condition of probation. Therefore, even if the order to perform community service is improper under *Vaughn* as in lieu of fines and costs, it is authorized under I.C. § 35-38-2-2.3(a)(14) as a condition of probation. The trial court did not err in imposing community service as a condition of probation.

Judgment affirmed

ROBB, C.J., and CRONE, J., concur.